UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MOHAMED DADDE,

                Plaintiff,

  -against-

QUEST DIAGNOSTICS INCORPORATED, and
"JANE DOE", THE PRESENTLY UNKNOWN
PHLEBOTOMIST AND/OR AGENT AND/OR
EMPLOYEE OF QUEST DIAGNOSTICS,

                Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
24-cv-465 (CBA)

**AMON, United States District Judge:**

      Plaintiff Mohamed Dadde filed a negligence suit against two defendants: (1) Quest Diagnostics Incorporated ("Quest"), and (2) a phlebotomist whose identity was then unknown to Dadde and who was thus named as 'Jane Doe'. (ECF Docket Entry ("D.E.") # 1 Ex. 1 ("Compl.").) Quest removed the case to this Court. (D.E. # 1 ("Notice of Removal").) At some point after removal, Dadde learned that Doe's true identity was that of Marcia Blackman. (D.E. # 28 Ex. 1 ("Pl. Mot.").) Since both Dadde and Blackman are New York residents, Blackman's inclusion as a party would defeat diversity jurisdiction. (Id. 6.)

      Dadde has filed a second suit based on the same conduct in New York state court, this time naming Blackman as a defendant. (Id. 2.) Now, he asks me to either dismiss this case without prejudice to allow him to pursue his New York state case or substitute Blackman as a named defendant in this case and remand it to state court.

      For the reasons set out below, I DENY Dadde's motion to dismiss this case without prejudice, but I GRANT his motion to substitute Blackman as a defendant and remand this case to state court.

1

## BACKGROUND

On December 19, 2023, Dadde filed a negligence suit against Quest and a phlebotomist then named as 'Jane Doe' in New York Supreme Court, Kings County. (Compl.) Dadde alleged that on June 13, 2023, the unknown phlebotomist failed to properly supervise Dadde after his venipuncture, causing Dadde to "faint, lose consciousness and fall to the ground with great force." (Id. ¶ 24.) Dadde's complaint alleged no federal cause of action. On January 22, 2024, Quest removed the case to this Court alleging jurisdiction based on diversity of citizenship. (Notice of Removal ¶ 7.) Dadde is a New York resident and Quest is a Delaware corporation whose principal place of business is in New Jersey. (Id. ¶¶ 8-9.) Dadde has not disputed that he seeks over $75,000 in damages. On March 25, 2024, as the parties exchanged initial discovery, Quest informed Dadde that the phlebotomist previously known as 'Jane Doe' was Marcia Blackman. (D.E. # 17.) Blackman, like Dadde, is a New York resident. (Pl. Mot. 6.) On September 16, 2024, Dadde filed a new lawsuit based on the same conduct in New York state court, this time naming Quest and Blackman as defendants. (D.E. # 23 Ex. 1.)

In the instant motion, Dadde asks that I grant one of two forms of relief. First, Dadde asks that I dismiss this case without prejudice to allow his new state case to proceed. (Pl. Mot. 10.) Alternatively, he asks that I "substitut[e] Marcia Blackman for Jane Doe and remand[] the case to state court." (Id.)

Quest opposes both forms of relief. As to dismissal without prejudice, Quest argues that it would be inappropriate for me to dismiss this case so that a "duplicative action" could proceed in state court. (D.E. # 25 ("Def. Opp.") 13.) As to substitution, Quest argues that Dadde has been dilatory in seeking Blackman's addition to this case, adding Blackman would prejudice Quest,

2

denying Dadde's motion poses no risk of causing multiple litigation, and Dadde's motivations for seeking Blackman's addition are improper. (Id. 9-16.)

## DISCUSSION

I discuss each of Dadde's requested forms of relief separately.

### I. Dismissal of This Action Without Prejudice is Unwarranted

Once a defendant has served an answer or a motion for summary judgment upon a plaintiff, that plaintiff may not unilaterally voluntarily dismiss his lawsuit without a court order, and a district court should only issue such an order "on terms that the court considers proper." Fed. R. Civ. P. 41(a). Quest served its answer well before Dadde filed the instant motion. (See D.E. # 8.) Thus, I must consider whether it would be proper to grant the voluntary dismissal Dadde seeks.

I find that it is not. As I describe infra § II, the Second Circuit has a well-established four-factor test for determining whether it would be more appropriate to join Blackman and remand this case to state court or to deny joinder. To grant dismissal without prejudice would be to defeat the point of this test. As Quest has observed, granting Dadde's motion to dismiss this case without prejudice would have the identical effect to granting Dadde's motion to join Blackman and remand this case. (See Def. Mot. 13-14.) For this reason, I deny Dadde's motion to dismiss this case without prejudice.

### II. Blackman Should Be Joined as a Defendant, so Remand Is Proper

When determining whether a civil action is removable based on diversity jurisdiction, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). But a plaintiff may later learn the identity of a fictitious defendant and move to substitute accordingly. When a nondiverse party "has been 'substituted' for the 'John Doe' defendant, it is also accurate to say that he has been 'joined' as a defendant for the purposes of

3

§ 1447(e), destroying diversity." Cartagena v. Ryder Truck Rental, Inc., No. 23-CV-4169 (JPO), 2023 WL 8520487, at *2 (S.D.N.Y. Dec. 8, 2023); see, e.g., Newcombe v. Adolf Coors Co., 157 F.3d 686, 690-91 (9th Cir. 1998) (analyzing a substitution of a named defendant for a Doe defendant as a matter of joinder). Thus, the proper question is whether Marcia Blackman should be joined as a defendant under 28 U.S.C. § 1447(e). Joinder may be mandatory, see Fed. R. Civ. P. 19, or permissive, see Fed. R. Civ. P. 20.

To determine whether mandatory joinder applies, I must determine whether Blackman is an indispensable party. A defendant is indispensable if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Dadde argues that Blackman is an indispensable party because Blackman was purportedly "the actual tortfeasor" and "the only person with actual . . . knowledge of what transpired." (Pl. Mot. 5-6.) Quest has offered to stipulate that it is "vicariously liable for Ms. Blackman's actions in the scope of her employment," that it is able to "cover Ms. Blackman and itself for any damages[,]" and that it "would not disclaim or deny insurance coverage for Ms. Blackman with respect to the blood draw at issue." (Def. Mot. 13.) These facts demonstrate that Blackman is not an indispensable party; to whatever extent Dadde could obtain relief from Blackman, Quest appears willing to supply that relief itself. See Reit v. Post Properties, Inc., No. 09 Civ. 5455 (RMB), 2010 WL 743533, at *2 (S.D.N.Y. Feb. 24, 2010) ("Rosario is not a necessary party because, among other reasons, Plaintiff may recover completely against the Defendants on a theory of respondeat superior without the absent party's presence in any judgment Plaintiff may win.") (cleaned up). Thus, mandatory joinder does not apply in this case.

On the other hand, Blackman is clearly an appropriate defendant for permissive joinder under Fed. R. Civ. P. 20(a)(2), since Dadde seeks to assert a "right to relief" from Blackman based

4

on the same set of facts Dadde has pled against Quest. Yet it is undisputed that joinder would destroy diversity in this case. Therefore, my options are to grant Dadde's joinder motion and remand this case or to deny Dadde's motion and retain jurisdiction. 28 U.S.C. § 1447(e). In making my decision, I consider four factors: "(1) any delay, and its reasons, in moving to amend [to join Blackman as a defendant]; (2) any resulting prejudice to the defendants; (3) the likelihood of multiple litigation; and (4) the plaintiff's motivation in moving to amend." Gursky v. Northwestern Mut. Life. Ins. Co., 139 F.R.D. 279, 282 (E.D.N.Y. 1991) (citations omitted). I analyze each factor below.

### 1. Delay in Moving to Amend

Quest claims that Dadde has been dilatory in moving to amend his complaint because Dadde declined "to conduct pre-suit discovery to identify prospective defendants." (Def. Opp. 9.) Quest argues that had Dadde conducted pre-suit discovery, he "could have known the identity of the Jane Doe phlebotomist" and that undertaking this discovery would not have endangered Dadde's ability to file suit within the applicable statute of limitations. (Id. 10.) Dadde responds that it was Quest who failed to exercise "due diligence" in failing to disclose Blackman's true identity "until 56 days after it served its [a]nswer." (D.E. # 28 Ex. 12 ("Pl. Reply") 4-5.)

Quest provides no authority for the proposition that a plaintiff has acted in an impermissibly dilatory manner when it declines to conduct pre-suit discovery, particularly when it could only obtain that discovery via court order. See NY CPLR § 3102(c) ("Before an action is commenced, disclosure to aid in bringing an action . . . may be obtained, but only by court order."). In determining whether a plaintiff has been dilatory, courts instead consider how quickly a plaintiff

5

seeks joinder after learning the information that motivates joinder. See Gursky, 139 F.R.D. at 282. Here, it is undisputed that Dadde moved for joinder shortly after learning Jane Doe's identity.[1]

The first factor militates in favor of granting joinder.

### 2. Prejudice to Defendants

Quest argues that it would be "significantly prejudiced by the substitution of Marcia Blackman" because doing so would "deprive Quest of federal court jurisdiction, which was properly sought by Quest at the time of removal" and would "impede Marcia Blackman's employment with Quest, forcing her to be out of work to attend her deposition, conferences, and hearings that should not require her attendance." (Def. Opp. 11.)

Neither argument is compelling. Granting remand after joining a defendant under § 1447(e) always prevents a defendant from proceeding in federal court despite the defendant having properly sought to litigate the case there. There is nothing inherently prejudicial about proceeding in state court. See, e.g., Gursky, 139 F.R.D. at 283 ("[T]he Court finds nothing prejudicial in having to defend this action in state court."); Cavaleri v. Amgen Inc., No. 20-cv-1762 (PKC) (RML), 2021 WL 951652, at *4 n.3 (E.D.N.Y. Mar. 12, 2021) ("Defendants obviously are not being denied or impaired in their ability to defend themselves; they simply have to do so in state court, which the Court does not view as 'severe prejudice.'"). As for the argument that joinder would impede Blackman's employment by Quest, I am unconvinced that it would do so. Defendant has acknowledged that Blackman was the phlebotomist who drew Dadde's blood. (D.E. #25 Ex. 6 ("Proposed Stip.") ¶ 1.) As such, Blackman will almost certainly be deposed

---

[1] In its opposition to Dadde's motion, Quest claims that Dadde has made "several misrepresentations" as to whether Quest diligently obtained and provided information about Blackman's identity to Dadde. (Def. Opp. 16-18.) I make no finding as to this issue; the relevant inquiry is whether Dadde promptly sought removal after learning Blackman's identity, not whether Quest is to blame for Dadde not learning Blackman's identity sooner.

regardless of whether she is a party to the lawsuit. Moreover, just as a corporate representative of Quest need not attend every proceeding in this case, nor would Blackman be required to do so.

The second factor militates in favor of granting joinder.

### 3. Likelihood of Multiple Litigation

Quest argues that "the likelihood of multiple litigation" should I decline to join Blackman "is nil" because, for the reasons discussed supra p. 4, Dadde can obtain full recovery from Quest. (Def. Opp. 12-13.) Dadde responds that the risk of multiple litigation has already come to pass because "Quest's conduct . . . forced [Dadde] to file another Summons and Complaint in State court." (Pl. Mot. 9.)

Here, there are "overlapping factual and legal issues" between Dadde's federal and state court claims. Nocella v. Allstate Ins. Co., No. 2:18-cv-1995 (ADS) (AYS), 2019 WL 1376868, at *4 (E.D.N.Y. Mar. 27, 2019). In fact, Dadde's state court claim is identical to the present action except that it names Blackman as a defendant. The fact that a second lawsuit is already ongoing is strong evidence that "remand of the present action will avoid wasting judicial resources as well as the inherent dangers of inconsistent results, both of which are at risk when parallel state and federal actions proceed simultaneously." Gursky, 139 F.R.D. at 283. Moreover, that Quest opposes Dadde's in-the-alternative request to voluntarily dismiss this action so Dadde can proceed against all defendants in state court confirms a high likelihood of multiple litigation. See Graves v. Home Depot U.S.A., Inc., No. 12 Civ. 3816 (LGS) (DF), 2013 WL 2357205, at *5 (S.D.N.Y. May 24, 2013) ("Plaintiff has, however, taken the position that, should the Court deny joinder and remand, then the Court should, in the alternative, dismiss the action against Home Depot without prejudice, so that Plaintiff may proceed to commence a single action against both defendants, in

7

state court. . . . [I]t would be inefficient for Plaintiff to be required to litigate against these two parties in two different actions."). That is what Dadde has asked for here.

The third factor militates in favor of granting joinder.

#### 4. Dadde's Motive

"Where the other three factors are met, this Court is required to remand the action to state court unless a plaintiff seeks to add a non-diverse party solely to destroy the court's basis for diversity jurisdiction." Durstenberg v. Electrolux Home Prods., Inc., No. 15 Civ. 9277 (CM), 2016 WL 750933, at *2 (S.D.N.Y. Feb. 23, 2016) (quotation omitted). It is not enough that, among other reasons for seeking joinder, "a plaintiff is motivated to destroy diversity"; that must be the plaintiff's sole motive. Id. (quotation omitted). And "the burden of proof on this factor is allocated to the Defendant, who must put forward some evidence of bad faith on the Plaintiff's part." Nocella, 2019 WL 1376868, at *5.

Quest argues that it is clear that Dadde's motive in seeking joinder is inappropriate because of "(1) Plaintiff's failure to conduct pre-suit discovery to identify the Jane Doe phlebotomist prior to filing his initial Complaint; (2) Plaintiff's rejection of Quest's stipulation affirming that it is to be held vicariously liable for Ms. Blackman's actions performed in the scope of her employment with Quest, without any explanation; and (3) Plaintiff's filing of a duplicative state court action during the pendency of this litigation." (Def. Opp. 14.)

I have already addressed Quest's first and third arguments. As I note supra pp. 5-6, there is no basis to expect that a plaintiff acting in good faith would have to file a motion for pre-suit discovery to determine the citizenship of an unknown defendant. And as I note supra p. 7, the fact that Dadde has filed a second action in state court demonstrates a risk of multiple litigation; it does not cut against a showing of good faith.

Quest's second argument merits further analysis. As I note supra p. 3, Quest's willingness to stipulate that it is vicariously liable for Blackman's conduct renders Blackman a dispensable party. But Dadde has rejected this stipulation. (Def. Opp. 14.) As Quest points out, when a plaintiff insists on joining an individual defendant even where it can obtain recovery against a corporate defendant through vicarious liability, it may be "difficult to avoid the conclusion that [the plaintiff] seeks joinder principally in order to manipulate this Court's jurisdiction." (Id. (quoting Rivera v. Robin, No. 19-CV-9558 (JPO), 2020 WL 1644014, at *1 (S.D.N.Y. April 2, 2020).) In Rivera, as in this case, a plaintiff filed a complaint in state court against a diverse defendant and added a non-diverse defendant only upon removal. 2020 WL 1644014, at *1. Similarly, in Chambers v. Capital Cities/ABC, another case Quest cites, a court dismissed a claim against an individual defendant without prejudice because the "plaintiff [had] offered no significant reason (other than potential tactical advantages at trial) for including any of the non-corporate defendants." 851 F. Supp. 543, 546 (S.D.N.Y. 1994).

These cases are distinguishable. Neither the Rivera nor the Chambers plaintiff could articulate an adequate explanation for why they sought to join individual defendants despite the applicability of vicarious liability. On the other hand, Dadde argues that including Blackman as a defendant will make it easier for Dadde to "assure that [Blackman] will comply with [Dadde]'s legitimate discovery and trial requests" because otherwise, Blackman would have "very little motivation to appear for a non-party deposition or trial." (Pl. Reply 3.) In my view, this is the justification that the Rivera and Chambers plaintiffs lacked.[2] After all, non-parties are treated with

---

[2] The Chambers court acknowledged the difference between party and non-party discovery by conditioning its dismissal of claims against individual defendants on the basis that "the natural person defendants will be subject to discovery to the same extent as if they remained parties." 851 F. Supp. at 546-47. But the fact that I could set such a condition and deny joinder rather than joining Blackman does not make Dadde's motive for seeking joinder illegitimate.

greater solicitude in the discovery process. See Tucker v. Am. Int'l Grp., Inc., 281 F.R.D. 86, 92 (D. Conn. 2012) ("Although the permissible scope of discovery from a non-party is generally the same as that applicable to discovery sought from parties . . . courts have considered the fact that discovery is being sought from a third or non-party, which weighs against permitting discovery.") (cleaned up); Fed. R. Civ. P. 45(d)(2)(B)(ii) (noting that a subpoena "must protect a person who is neither a party nor a party's officer from significant expense"). At the very least, this rationale renders Quest unable to carry its burden of proving that Dadde's motion is solely driven by the impermissible motive of destroying diversity. Thus, the fourth factor militates in favor of granting joinder. Since all four factors favor joinder, I find that joinder is appropriate.

## CONCLUSION

For these reasons, the Court DENIES Dadde's motion to voluntarily dismiss this action but GRANTS Dadde's motion to join Marcia Blackman as a defendant and remand this case to New York Supreme Court, Kings County. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: March  18, 2025
Brooklyn, New York

Carol Bagley Amon
United States District Judge